**ANEMONE BENNETT v. PNC FINANCIAL SERVICES GROUP, INC..**
**Case No. 3:14-cv-00160-MMH-MCR**

# EXHIBIT A

2863858.1

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release (the "Agreement") is made by and between Anemone Bennett ("Bennett" or "Plaintiff") and PNC Bank, National Association ("PNC" or "Defendant"). For purposes of this Agreement, PNC is defined to include all current and former parent, subsidiary, and affiliated companies and divisions.

### WITNESSETH:

WfHEREAS, a dispute arose between Plaintiff and the Defendant concerning Bennett's employment with PNC, which dispute is the subject of a lawsuit filed by Plaintiff styled as *Anemone Bennett v. PNC Financial Services Group, Inc.* filed in the United States District Court for the Middle District of Florida, Jacksonville Division, Civil Action Docket No. 3:14-cv-00160-MMH-MCR (the "Lawsuit");

WHEREAS, on October 17, 2014, the Court entered an Order granting in part Defendant's Motion for Sanctions and ordering Bennett to pay the reasonable costs of the mediation conference, including Defendant's reasonable costs of attendance at the mediation and its attorneys' fees associated with preparing its Motion for Sanctions;

WHEREAS, on October 17, 2014, the Court entered an Order granting in part Defendant's Motion to Compel and ordering Defendant to file an affidavit of its costs and attorneys' fees incurred with preparing its Motion to Compel;

WHEREAS, Michael L. Grossman, Esquire is counsel of record for Bennett in the Lawsuit and in connection with the negotiation, preparation, and execution of this Agreement;

WHEREAS, Plaintiff and Defendant desire to compromise and settle the disputes and claims each has with or against the other and to set forth in this Agreement their mutual understanding and agreement with respect to their compromise and settlement;

NOW, THEREFORE, for the mutual covenants contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Plaintiff and Defendant, intending to be legally bound, agree as follows:

1.      Definitions.   In addition to the terms that are defined elsewhere in this Agreement, the following terms shall have the meaning ascribed to them:

Claims shall mean all claims, demands, reckonings, actions, causes of action, suits, liabilities, judgments, liens, debts, expenses, damages, or any other right or asserted right to the payment of money or to the performance of any obligation, whether absolute or contingent, due or to become due, disputed or undisputed, liquidated or unliquidated, known or unknown, express or implied or legal or equitable, including, without limitation, claims for attorneys' fees, any claims raised in the Lawsuit, or any claims arising under federal, state or local laws

governing the workplace, hiring, termination, terms and conditions of employment and wages, hours, benefits and compensation, including, but not limited to, the Fair Labor Standards Act as amended, the Florida Civil Rights Act, the Florida Minimum Wage Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, as amended, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Equal Employment Opportunity Act of 1972, the National Labor Relations Act, the Labor Management Relations Act, the Employee Retirement Income Security Act of 1974, the Older Workers Benefit Protection Act, or the Consolidated Omnibus Budget Reconciliation Act of 1986, all as and to the extent amended, claims for unlawful termination in violation of public policy, and all claims growing out of any legal restrictions on PNC's right to terminate or discipline its employees.

Person shall mean any individual, partnership, corporation, joint venture, trust, unincorporated organization, or any governmental agency or political subdivision.

2.      Settlement Terms:  In consideration of Bennett's execution of this Agreement and dismissal of the Lawsuit, her undertakings herein, and her agreement to be legally bound, PNC agrees to:

(a)     waive and release any and all claims for attorneys' fees and costs that it may have and/or may assert in connection with its Motion for Sanctions and Motion to Compel;

(b)     waive and release any and all claims that it may have and/or may assert in connection with its Motions for Sanctions and Motion to Compel;

Bennett expressly agrees that this is valid consideration for her waiver and release as set forth herein, including but not limited to, her waiver and release of any and all claims asserted in the Lawsuit, and that the terms of this Agreement constitute payment in full without compromise for any and all claims asserted in the Lawsuit.

Within three days of PNC's attorney receiving an executed copy of this Settlement Agreement by Bennett, the parties will file with the Court necessary documents to obtain approval of the settlement by the Court and dismissal with prejudice of the Lawsuit.

3.      Waiver and Release By Bennett.  In consideration of the covenants undertaken herein by Defendant and except for those obligations created by or arising out of this Agreement, Bennett for herself and each of her descendants, dependents, heirs, executors, administrators and assigns, and all other Persons claiming by, through, or under her, hereby:

(a)     Fully releases and forever discharges Defendant, and each of its successors, assigns, representatives, heirs, past and present parent corporations, divisions, subsidiaries, affiliates and related companies, and all past and present directors, officers, shareholders, attorneys, trustees, insurers, current and former employees and agents of the above described entities (the "Defendant's Releasees"), both personally and in their capacity as directors, officers,

*CONFIDENTIAL – NOT FOR DISTRIBUTION*

AM 40557071.1

shareholders, attorneys, trustees, insurers, employees, and agents from any and all Claims which Bennett or any person claiming by or through her, has or ever had against any or all of the Defendant's Releasees, including, without limitation, all Claims that have been, or could have been, asserted in the Lawsuit, or otherwise prior to the date of this Agreement, and Bennett hereby covenants not to file a dispute or charge to assert such Claims; and further agrees to take all steps necessary for the dismissal with prejudice of the Lawsuit;

(b)     Agrees not to file (or permit to be filed in her name or on her behalf) any lawsuit in court against any of the persons or entities released in this Agreement (other than for breach of this Agreement) based upon any act or event which occurred on or before the effective date of this Agreement.

(c)     Agrees that, although this waiver and release does not prevent her from initiating a charge with the Equal Employment Opportunity Commission ("EEOC"), if any charge, complaint, lawsuit or administrative claim is filed in her name or on her behalf with the EEOC or any other administrative agency or organization, or in any other forum, against any of the persons or entities released in this Agreement, based upon any act or event that occurred on or before the date she signed this Agreement, Bennett will not seek or accept any personal relief, including but not limited to any award of monetary damages or reinstatement to her employment with Defendant. In addition, this Agreement does not prohibit Bennett from cooperating with and providing information to the Equal Employment Opportunity Commission (including disclosing the existence and terms of this Agreement), and to other federal, state and local government or regulatory agencies in any investigation they may conduct, or where such cooperation is otherwise required by law.

(d)     Agrees that the waiver and release in subparagraph 3(a) above shall not apply to and does not prohibit (i) a claim for workers' compensation benefits, unemployment compensation benefits, vested retirement benefits, or breach of this Agreement; or (ii) claims of retaliation under the Sarbanes-Oxley Act, the Commodity Exchange Act, or the whistleblower rules established by the Consumer Financial Protection Bureau.

4.     Representations and Warranties of Bennett:   To induce Defendant to enter into this Agreement, Bennett represents and warrants that:

(a)     This Agreement, once executed and delivered by Bennett, will be a valid and binding obligation of Bennett enforceable against her in accordance with its terms;

(b)     Bennett has not assigned or in any way conveyed, transferred or encumbered all or any portion of the Claims covered by this Agreement;

(c)     Bennett has fully read and understands all of the terms and conditions set forth in this Agreement, and has had the benefit of advice of legal counsel of her own choice, and is entering into this Agreement knowingly, voluntarily, and without any promise of benefit other than as set forth in this Agreement;

*CONFIDENTIAL – NOT FOR DISTRIBUTION*

AM 40557071.1

(d)     Bennett acknowledges and agrees that she has received all compensation, wages, salary, bonuses, incentive pay, commissions, and benefits to which she was entitled and/or which were readily calculable and/or due in connection with her employment and/or separation of employment with PNC and PNC owes her nothing further in relation to such employment; and

(e)     Other than the Lawsuit discussed above, Bennett represents that she has not initiated, and that, to the best of her knowledge, there are no pending administrative charges, lawsuits, civil actions or claims of any kind pending against Defendant concerning Bennett's employment with Defendant, or any parent, subsidiary or related entity.

5.     No Future Employment:  To induce Defendant to enter into this Agreement, Bennett acknowledges and understands that she will not be considered for employment with Defendant, and/or its successors and assigns, parents, subsidiaries, divisions and affiliated corporations, in the future.  Bennett covenants that she will not hereafter apply for or otherwise seek or accept employment with Defendant, and/or its successors and assigns, parents, subsidiaries, divisions and affiliated corporations.  If subsequent to the date of this Agreement, Bennett is employed by PNC, and/or its successors and assigns, parents, subsidiaries, divisions and affiliated corporations, and her employment ceases, Bennett acknowledges that any such cessation of employment will be by virtue of this Agreement, and for no other reason.  If in the future Bennett is employed by a company that is acquired by PNC subsequent to the date of this Agreement, she understands and agrees that she will be terminated from that employment without reasonable cause, for purposes of unemployment compensation.

6.     Confidentiality.

(a)     Bennett agrees that any and all discussions or negotiations between the parties leading up to and regarding this Agreement, the terms of this Agreement, the settlement amount, or any other consideration paid by Defendant under this Agreement, shall remain confidential as between the parties, and shall not be disclosed to any other person, other than Bennett's respective legal and financial advisors or members of Bennett's immediate family, or as she may be required by law to disclose pursuant to lawful judicial or administrative authority.  Bennett agrees that she will instruct her attorneys, tax advisor, and immediate family members to whom she disclosed such information that they must abide by the confidentiality provisions contained herein, and she understands and agrees that any breach by them will be considered a breach by her.  Without limiting the generality of the foregoing, Bennett shall not respond to or in any way participate in or knowingly contribute to any public or private discussion, notice or other publicity concerning any and all discussions or negotiations between the parties leading up to and regarding this Agreement, the terms of this Agreement, the Settlement Amount, or any other consideration paid by Defendant under this Agreement.  Bennett agrees that from and after the date hereof, inquiries from third-parties regarding the claims asserted in the Lawsuit, any underlying facts or circumstances related to the claims, any and all discussions or negotiations between the parties leading up to and regarding this Agreement, the terms of this Agreement, the Settlement Amount, or any other consideration paid by Defendant under this Agreement, shall be met only with the response that "the matter was amicably resolved."  For purposes of seeking future employment, Bennett is permitted to discuss her employment history at PNC, the circumstances of her termination, and the fact that the lawsuit was amicably resolved.  As set

*CONFIDENTIAL – NOT FOR DISTRIBUTION*

forth in paragraph 9, *infra*, Defendant and the Defendant's Releasees specifically disclaim any liability to Bennett or any other person. Bennett agrees not to state, suggest or imply the contrary to any person or entity, other than as provided in this paragraph. Bennett agrees that any disclosures in violation of paragraph 6(a) shall constitute and be treated as a material breach of this Agreement and that Defendant shall be entitled to its reasonable attorneys' fees if it is successful in an action against Bennett for such a violation, as approved by the court in the forum in which such action is brought.

(b)     Bennett agrees and acknowledges that she will not at any time disclose to any other person, corporation, or other entity (except as required by applicable law or for the proper performance of her obligations under this Agreement) or use any confidential information obtained by her incident to her employment with or at PNC, or any parent, subsidiary, or related entity. All information concerning the business of PNC shall be considered confidential information unless (a) such information is publicly available before the date of this Agreement, or (b) such information becomes publicly available by reason of acts not attributable to Bennett's breach of this Agreement. Without limiting the generality of the foregoing, confidential information shall include corporate information, including plans, strategies, tactics, policies, procedures and practices; marketing information; financial information; operational information; personnel information; and customer information. Bennett represents and warrants that she has returned all confidential information in her possession and control to Defendant. Provided, however, that this paragraph does not prohibit her from cooperating with and providing information to the Equal Employment Opportunity Commission (including disclosing the existence and terms of this Agreement), and to other federal, state and local government or regulatory agencies in any investigation they may conduct, or where such cooperation is otherwise required by law.

7.     References. Bennett shall direct all reference requests to Defendant's current service provider, "The Work Number," which will only answer with Bennett's name, prior job title, and dates of service. With written authorization from Bennett, Defendant's current service provider also will release the two prior years of salary information.

8.     Costs. Each party to this Agreement shall bear her/its own costs (including, without limitation, attorneys' fees, court fees and other costs and expenses of any kind) incurred in connection with the Lawsuit, the negotiation, preparation and execution of this Agreement and any other agreements or instruments executed in accordance with the terms of this Agreement.

9.     No Admission of Liability. This Agreement does not constitute an admission by Defendant or any and all of the Defendant's Releasees (i) of the matters alleged in the dispute or Lawsuit; (ii) of any violation (by Defendant or its Releasees, or any of its successors and assigns, subsidiaries, divisions, and affiliated corporations) of any federal, state or local law, ordinance or regulation; or (iii) of any liability or wrongdoing whatsoever. Neither this Agreement, nor anything in this Agreement, shall be construed to be or shall be admissible in any proceeding as evidence of liability or wrongdoing by Defendant (or any and all of the Defendant's Releasees), or any of its successors and assigns, subsidiaries, divisions, and affiliated corporations. This Agreement may be introduced, however, in any proceeding to enforce the Agreement.

*CONFIDENTIAL – NOT FOR DISTRIBUTION*

AM 40557071.1

10.     Successors and Assigns.  This Agreement shall be binding upon, inure to the benefit and be enforceable by the parties hereto and their respective heirs, legal representatives, successors and assigns.

11.     Modification.  This Agreement may not be amended or modified except by written instrument signed by authorized representatives of all parties to this Agreement.

12.     Waiver.  No failure of a party to insist on strict compliance by another party with its obligations under this Agreement and no custom or practice of the parties in variance with the terms of this Agreement shall constitute a waiver of that party's right to demand exact compliance with the terms of this Agreement.  Any waiver by a party of a default shall be limited to the particular instance and shall not operate or be deemed to waive any further default.

13.     Headings.  The headings in this Agreement are inserted for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

14.     Governing Law.  This Agreement shall be governed in all respect by, and shall be construed in accordance with, the internal laws of the Commonwealth of Pennsylvania regardless of any choice of law rules.

15.     Counterparts.  This Agreement may be executed in three (3) or more counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same instrument.

16.     Entire Agreement.  This Agreement, and all instruments and agreements referred to herein or to be executed in connection herewith, contain the entire agreement among the parties with respect to the subject matter hereof and thereof.  Any prior agreements, promises, negotiations or representations, either oral or written, relating to the subject matter of this Agreement and not expressly set forth in this Agreement, or in any instruments or agreements executed in connection herewith, are of no force or effect.

17.     **JURY TRIAL WAIVER.  BENNETT AND DEFENDANT IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING SEEKING TO ENFORCE, OR ALLEGING THE BREACH OF, ANY PROVISION OF THIS AGREEMENT.**

18.     Third-Party Beneficiaries.  No Person other than the parties hereto and their respective successors and assigns are intended to be a beneficiary of this Agreement.  In executing this Agreement, the parties do not intend to create third-party beneficiary rights in anyone not a party to the Agreement.

19.     Cooperation.  Bennett and PNC shall cooperate with each other in good faith in taking such action at the request of another as may be reasonably necessary and appropriate to carry out the intent and purpose of this Agreement, including without limitation, all actions necessary to ensure that the Lawsuit is dismissed with prejudice.

*CONFIDENTIAL – NOT FOR DISTRIBUTION*

AM 40557071.1

**PLEASE READ THIS AGREEMENT AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. YOU SHOULD CONSULT AN ATTORNEY OF YOUR CHOICE ABOUT THIS AGREEMENT BEFORE YOU SIGN THE AGREEMENT. THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. YOU ALSO ARE GIVING UP YOUR RIGHT TO A JURY TRIAL.**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the day first written below.

Date: 11/19/14

ANEMONE BENNETT

Sworn to before me this 19th day of November, 2014

Notary Public
My Commission Expires: 6/25/14

TRENA NESLER
MY COMMISSION #FF11520
EXPIRES June 25, 2018
(407) 398-0153    FloridaNotaryService.com

Date: December 3, 2014

PNC BANK, NATIONAL ASSOCIATION

By:

*CONFIDENTIAL – NOT FOR DISTRIBUTION*

AM 40557071 1